## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR 18-196-HE-1 |
| | ) | |
| OWEN HENRY LONG, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM
## AND MOTION FOR A DOWNWARD VARIANCE

Defendant, Owen Henry Long, Jr., submits the following as his sentencing memorandum and request for a downward variance.

## 1.  Sentencing overview

The sentence imposed by the Court in consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a) should be "sufficient but not greater than necessary to fulfill the purposes of sentencing."  18 U.S.C. § 3553(a)(2).  *See Kimbrough v. United States,* 552 U.S. 85, 101 (2007)(parsimony provision is the "overarching" directive of the statute).

## 2.  18 U.S.C. § 3553(a) factors

### a.  The nature and circumstances of the offense

Having presided over Defendant's jury trial, the Court is well aware of the nature and circumstances of the offense.  On count 1, Mr. Long was convicted of possessing

1

with intent to distribute 168 grams of a mixture or substance containing a detectable amount of methamphetamine.  The jury failed to reach verdicts on count 2, which charged Mr. Long with being a felon in possession of a firearm, and count 3, which charged him with possessing a firearm in furtherance of a drug trafficking crime.  The jury deliberated for approximately 10 hours, longer than it took to actually try the case. A mistrial was declared on counts 2 and 3.  The government elected not to retry Mr. Long on these charges.  (Final PSR ¶ 3)

The Probation Office describes the offense conduct in paragraphs 6-10 of the presentence report, but certain facts are omitted, mischaracterized, or not placed in proper context.

As reflected in Mr. Long's objection to paragraph 6, the Probation Office fails to note what was shown both at the hearing on the motion to suppress and at trial: that the Elk City Police Officer who attempted the initial traffic stop committed perjury when he claimed that he pulled over the truck in which Defendant was a passenger because of a defective tag light.  The photographic evidence presented at the hearing on the motion to suppress and at trial showed that the tag light was working.  The Probation Officer's attempt to read "ambiguity" into evidence that was unambiguous is a counterfactual exercise.  (Final PSR, p. 21)

Likewise, the claim that Mr. Long actively resisted arrest is disproved by the video of the arrest.  Mr. Long was slow to get out of the vehicle at the command of the police because he had been injured when the truck went off the road.  He was dragged out of the

2

vehicle and beaten by the police.  (Final PSR, p. 21)

The Probation Officer accepts at face value the reliability of Mr. Long's statements to law enforcement the day after his arrest, from which the fanciful and inflated quantity of 96 kilograms of "ghost methamphetamine" is extrapolated.  Little if any credence should be given to this calculation of drug quantity.  Mr. Long's statement was not recorded, even though recording equipment was available.  It bears repeating the police were caught giving false evidence regarding the justification for the initial attempted traffic stop.  There is no corroborating evidence for the drug quantity attributed to Mr. Long based on his alleged statements.  The search of Mr. Long's residence yielded little useful evidence and in no way suggested Defendant was "moving" anywhere close to the quantities of methamphetamine attributed to him by the Probation Office.  (Final PSR ¶¶ 8-10, and pp. 21-22)

At the suggestion of the government, the Probation Office added paragraph 5a. to the report.  (Final PSR p. 5)  This paragraph states that on December 6, 2018 the government "received information" that Defendant was planning to "kill an inmate at random" in the Logan County Jail "if he loses at trial."  This information lacks any reliability because it is without attribution.  It also lacks reliability because literally nothing happened.  Mr. Long did not kill anybody.  Nor did he commit any sort of assault on anyone.  He has committed no acts of violence in the months he has been incarcerated awaiting sentencing.  This anonymous information should play no role in the determination of sentence.

**b.  The history and characteristics of the Defendant**

Paragraphs 45-60 of the final presentence report, which include a statement by Mr. Long, accurately describe Mr. Long's personal history.  (Final PSR pp. 14-17)  Defendant was raised in extreme poverty, among many children raised by his grandmother.  His background can only be described as severely dysfunctional.  Mr. Long's mother gave him away.  His father was incarcerated when Mr. Long was born, and through much of his childhood.  Mr. Long states that many of his relatives were drug addicts who engaged in criminal behavior.  Mr. Long was subjected to a pattern of abuse as a child.  In this environment, it comes as little surprise that Defendant himself began to use drugs at an early age, and became addicted to them.  He was placed in juvenile facilities from time to time.

Perhaps also not surprisingly, Mr. Long embarked on a downward spiral of crime as an adult.  Mr. Long's significant criminal history is largely, but not exclusively, drug-related (Final PSR ¶¶ 29-37, Final PSR pp. 9-14), and can be seen as a  function or outgrowth of his own drug addiction.  While incarcerated, Mr. Long became involved in a prison gang, both as a means of survival and to achieve a sense of belonging.

**c.  The types of sentence available**

The statutory punishment range for Mr. Long's drug conviction is not less than 5 years nor more than 40 years imprisonment.  This offense of conviction also carries a fine of up to $5,000,000.00.  (Final PSR p. 1, ¶ 64, p. 18)  By statute, the term of supervised release for the drug conviction is not less than four years.  (Final PSR ¶ 67, p. 18)  Under

the advisory sentencing guidelines, the term of supervised release for count 1 is four years to five years.  (Final PSR ¶ 68, p. 18)

Mr. Long is ineligible for a sentence of probation both by statute and under the advisory guidelines.  (Final PSR ¶¶ 69-70, p. 18)

**d.  The advisory guidelines range**

The Probation Office sets Mr. Long's Adjusted Offense Level (Subtotal) and his Total Offense Level at 42.  This total consists of a base offense level of 38, with the attribution of 96 kilograms of methamphetamine to Mr. Long, a 2-level increase for possessing a firearm in the commission of the offense, and a 2-level increase for obstruction of justice for attempting to elude the police during the high speed chase that preceded Mr. Long's arrest.  (Final PSR ¶¶ 15-23, pp. 6-7)   The Probation Office places Mr. Long in criminal history category VI.  All this equates to an advisory guidelines sentencing range of 360 months to life.  Since the statutory maximum for the offense of conviction is 40 years, the Probation Office states that the advisory guidelines range is 360 to 480 months.  (Final PSR ¶¶ 64-65, p. 18)

Defendant has objected[1] to the attribution of 96 kilograms of what could be termed "anecdotal" methamphetamine.  That quantity is founded on Mr. Long's unreliable, unrecorded statement, which lacks any corroboration.  Mr. Long argues that he should be

---

[1] To avoid repetition, Mr. Long simply notes the nature of his objections here, since they are more fully stated in body of the objections themselves, and will be argued at sentencing.

held accountable for only the 154 grams of methamphetamine seized at the time of his arrest.  In the alternative, it is argued that the quantity of methamphetamine attributed to Mr. Long should be consistent with the jury's verdict.  (Final PSR, p. 22, objections to ¶¶ 8, 10, and 15, pp. 21-22)   To base a sentence on a drug quantity not reflected by the jury's verdict would violate the rule of *Apprendi v. New Jersey,* 530 U.S. 466 (2000) and its progeny.

Mr. Long also objected to the 2-level specific offense characteristic for possession of a firearm during the commission of the crime and an upward adjustment for obstruction of justice for attempting to elude the police.  (Final PSR, objections to ¶¶ 16 and 19, pp. 22-23)

Mr. Long objected to the Probation Office placing him in criminal history category VI, arguing he should be in criminal history category V, and/or that criminal history category VI overstates the seriousness of an adult record of convictions consisting largely of drug offenses.  (Final PSR objections to ¶¶ 30, 39, 40 and 65, pp. 25-26)

Based on Mr. Long's objections, he argues his total offense level should be either 32 (188-235 months), 28 (130-162 months), or 24 (92-115 months).  (Final PSR, objections to ¶¶ 40 and 65, p. 26)

### e.  Pertinent policy statements of the Sentencing Commission

It does not appear that any particular policy statements of the Sentencing Commission carry any special relevance to this case.  However, it should be noted that the trend has been to decrease sentences for drug offenses.

In addition, to the extent the purity of the methamphetamine possessed by Mr. Long will play a part in the advisory guidelines calculation, Defendant argues that the differences between the guideline ranges for "pure" methamphetamine, or "ice," and a mixture or substance of methamphetamine, have as little policy justification as the old discredited crack cocaine/powder cocaine ratios.  (Final PSR, objections to ¶¶ 20 and 23, p. 24)

**f.  The need to avoid unwarranted sentencing disparities**

The co-defendant in this case, Angela Shepherd, received a prison sentence of 24 months.  Although, to counsel's knowledge, Ms. Shepherd had no record of previous convictions, she was no naif.  She was "slinging dope" on behalf of her brother before Mr. Long was released from his last stint in prison.  The difference between the 24 month sentence received by Ms. Shepherd and the guideline range for Mr. Long fixed by the Probation Office, or the guideline ranges suggested by Defendant's objections, even taking into account his record of prior convictions, would constitute an unwarranted sentencing disparity in this very case.

**g.  The need to provide restitution to the victims**

Restitution is not a factor in this case.

**3.  Request for a downward variance**

A downward variance from whatever guidelines range the Court deems to apply would be appropriate in this case.  Aside from a conviction for transferring bodily fluids on a state employee (Final PSR ¶ 32, p. 11), Mr. Long has no record of conviction for

violent offenses, assuming this can be classified as a violent offense.  The criminal history category VI assigned to Mr. Long by the Probation Office overstates the seriousness of his criminal history.  The quantity of drugs attributed to Mr. Long by the Probation Office is problematic.  This case featured police misconduct in a rather prominent way.  The jury evidently struggled to reach the guilty verdict on count 1, and could not reach a verdict on the gun charges, which add two levels to the Probation Office's advisory guidelines calculation.

Mr. Long's background of extreme poverty, parental neglect, growing up in a drug-infested environment with criminal relatives, drug use, and later addiction, at an early age, and the pattern of abuse he suffered as a child are all mitigating factors that should receive significant weight.  Although the sad facts of Mr. Long's background and upbringing certainly do not excuse his conduct in this case, they go a long way to explaining the path his life took and how he wound up where he is.

Based on all this, a sentence below the guidelines range determined by the Court would reflect the seriousness of the offense, provide just punishment, promote respect for the law, deter others, and protect the public.  18 U.S.C. § 3553(a).

Respectfully submitted,

/s/ David Autry
David Autry, OBA #11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
(405) 521-9600
(405) 521-9669 [fax]
dbautry77@gmail.com

Lawyer for Defendant,
Owen Henry Long, Jr.

**Certificate of Electronic Filing and Service**

This is to certify that on this 20th day of July 2019, I caused the foregoing instrument to be filed with the Clerk of the Court using the ECF System for filing, with electronic service to be made via CM/ECF to Nicholas J. Patterson and Jason M. Harley, AUSAs, and to all other counsel of record. To counsel's knowledge, there are no non-ECF registrants who are counsel in this case.

/s/ David Autry